UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

TODD MORSE,

                                 Plaintiff,

-v-

ANDREW SAUL,
Commissioner of Social Security,

                                 Defendant.

19-CV-304-MJR
DECISION AND ORDER

---

Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 9).

Plaintiff Todd Morse brings this action pursuant to 42 U.S.C. §§405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security finding him ineligible for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, Morse's motion (Dkt. No. 6) is granted, the Commissioner's motion (Dkt. No. 7) is denied, and the case is remanded.

## BACKGROUND[1]

Morse protectively filed an application for DIB on June 3, 2015, alleging disability as of November 14, 2014, due to serious depression, anxiety, epilepsy seizures, extreme fatigue, and sleep apnea. (Tr. 77, 158-164, 190). [2] His claim was initially denied on

---

[1] The Court assumes the parties' familiarity with the record in this case.
[2] References to "Tr." are to the administrative record in this case.

October 29, 2015. (Tr. 93-104). On December 12, 2015, Morse filed a timely written request for hearing. (Tr. 105-106).

On December 14, 2017, a hearing was conducted by Administrative Law Judge ("ALJ") Stephen Cordovani, in Buffalo, New York. (Tr. 32-76). Morse appeared, along with his attorney. A vocational expert also appeared. At the hearing, Morse, through counsel, requested only a closed period of disability commencing on the alleged onset date, November 21, 2014, through February 15, 2017, as Morse had returned to work on February 16, 2017. (Tr. 13).

On February 28, 2018, the ALJ issued a decision finding Morse not disabled during the closed period. (Tr. 13-31). That decision became final when on January 10, 2019, the Appeals Council denied his request for review. (Tr. 1-6). This action followed.

## DISCUSSION

I. *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*,

312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II.   <u>Standards for Determining "Disability" Under the Act</u>

A "disability" is an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind

of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §§423(d)(2)(A), 1382c(a)(3)(B). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §§404.1520(b), 416.920(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* §§404.1520(b), 416.920(b). Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §§404.1520(c), 416.920(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* §§404.1520(c), 416.920(c). As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* §§404.1520(c), 416.920(c). Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets

the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §§404.1520(d), 416.920(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.* §§404.1520(d), 416.920(d).

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §§404.1520(e), 416.920(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §§404.1545(a)(1), 416.945(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §§404.1520(f), 416.920(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* §§404.1520(f), 416.920(f). Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §§404.1520(g)(1), 416.920(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.* §§404.1520(g)(1), 416.920(g)(1). If, however, the claimant cannot

adjust to other work, he or she is disabled within the meaning of the Act. *Id.* §§404.1520(g)(1), 416.920(g)(1).

The burden through steps one through four described above rests on the claimant. If the claimant carries his burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

### III. The ALJ's Decision

The ALJ followed the required five-step analysis for evaluating disability claims. Under step one, the ALJ found that Morse had not engaged in substantial gainful activity from the alleged onset date, November 21, 2014, through February 15, 2017. (Tr. 15). At step two, the ALJ concluded that during the closed period, Morse had the following severe impairments: epilepsy or seizure disorder; migraine headaches; and major depressive disorder with anxiety symptoms. (Tr. 15-16). At step three, the ALJ found that during the closed period, Morse did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. *Id.* Before proceeding to step four, the ALJ assessed Morse's RFC, during the closed period, in pertinent part, as follows:

> [T]he claimant had the [RFC] to perform a full range of work at all exertional levels but with the following nonexertional limitations: no work around unprotected heights or moving mechanical parts; no operation of heavy machinery; no ladders, ropes, or scaffolds; no loud noise or lights brighter than present in regular office or retail settings; can understand, remember and carry out simple instructions and tasks; able to work in a low stress work environment reflected by the simple instructions and tasks, no supervisory duties, no independent decision-making required, no strict production quotas, minimal changes in work routine and processes; and

> frequent interaction with supervisors and occasional co-workers and the general public.

(Tr. 19). Proceeding to step four, the ALJ found that during the closed period, Morse was unable to perform any past relevant work. (Tr. 25). At step five, the ALJ found that, considering Morse's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that he can perform during the closed period, including Warehouse Worker, Stock Checker, and Laundry Worker. (Tr. 25-26). Accordingly, the ALJ concluded that during the closed period, Morse was not disabled under the Act. (Tr. 26).

## IV.   *Morse's Challenges*

Morse argues that this case must be remanded because: (1) in determining Morse's mental RFC, the ALJ rejected every medical opinion and improperly substituted his own medical judgement over that of any physician; and (2) the ALJ failed to properly evaluate Morse's subjective symptoms and mischaracterized the evidence in the record. The Court agrees.

It is well established that an "ALJ cannot arbitrarily substitute his own judgment for competent medical opinion" and that "while an [ALJ] is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who [submitted an opinion or] testified before him." *Balsamo v. Chater*, 142 F.3d 75, 81 (2nd Cir. 1998) (internal quotations and citations omitted). A "circumstantial critique by non-physicians [such as an ALJ], however thorough or responsible, must be overwhelmingly compelling in order to overcome a medical opinion." *Shaw v. Chater*, 221 F.3d 126, 135 (2nd Cir. 2000) (internal quotations and citations omitted).

"The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." Social Security Ruling ("SSR") 96-8p: Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 61 Fed. Reg. 34474, 34476 (July 2, 1996). An ALJ commits legal error, requiring remand, when he fails to set forth clearly the opinions he relied upon when determining a claimant's RFC and does not perform a function-by-function analysis regarding a claimant's ability to perform work activities. See *Hogan v. Astrue*, 491 F. Supp. 2d 347, 354 (W.D.N.Y. 2007). Remand is required when the lack of nexus between the RFC and evidence of record precludes meaningful review. See *Cichoki v. Astrue*, 729 F.3d 172, 173-74, 177 (2d Cir. 2013).

An ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and thus an ALJ's determination of RFC without medical opinion authority is not supported by substantial evidence. *Zayas v. Colvin*, 15-cv-6312-FPG, 2016 U.S. Dist. LEXIS 58134, at *11 (W.D.N.Y. May 2, 2016). Only in rare circumstances, particularly where the "medical evidence shows relatively minor . . . impairment," can an ALJ permissibly "render a common sense judgment" about functional capacity even without a physician's assessment. *Gross v. Astrue*, 12-cv-6207-MWP, 2014 U.S. Dist. LEXIS 63251 at *51 W.D.N.Y. May 7, 2014) (internal quotations and citations omitted) see also *Kain v. Colvin*, 14-cv-650-WMS, 2017 U.S. Dist. LEXIS 73595, at *8 (W.D.N.Y. May 14, 2017) (when the record contains medical findings merely diagnosing the claimant's impairments without relating that diagnosis to functional capabilities, the "general rule is that the Commissioner 'may not make the connection himself.'") (citations omitted).

In the absence of supporting expert medical opinion, the ALJ should not engage in his own evaluations of the medical findings. *Balsamo*, 142 F.3d at 81. Although an ALJ has "considerable and constant exposure to medical evidence" he is not free to make inferences or diagnoses which are not advanced in the medical record. *Glover v. Astrue*, 08-cv-218-MAT, 2010 U.S. Dist. LEXIS 25533, at *11 (W.D.N.Y. Mar. 18, 2010) (citing *Curry v. Apfel*, 209 F.3d 117, 123 (2nd Cir. 2000)).

In the instant case, when determining Morse's mental RFC, the ALJ gave "little" or "limited" weight to every medical opinion concerning Morse's mental functioning. (Tr. 22-24).[3] The ALJ gave "limited" weight to the December 1, 2016 mental assessment form completed by Morse's longstanding counselor, Dr. Jonathan Treible, Ph.D.; "little weight" to the Global Assessment Functioning scores and the October 3, 2016 mental assessment form completed by Morse's treating psychiatrist, Dr. Richard Bennett, M.D.; "little weight" to the October 20, 2016 mental assessment form and letter completed by Morse's primary care doctor, Dr. Michael Kane, M.D.; "little weight" to the opinion of consultative examiner, Dr. Susan Santarpia, Ph.D.; and "little weight" to the opinion of state agency mental health consultant, Dr. S. Juriga, Ph.D. (Tr. 22-24, 84-87, 698-701, 796, 877-80, 932-24, 937-39).

Further, the other mental health evidence cited by the ALJ does not constitute substantial evidence for his mental RFC finding. The ALJ relied on the following non-opinion mental health evidence to support his decision: (1) a March 2015 treatment note by Dr. Bennett (Tr. 20); (2) the psychiatric consultative examination report (Tr. 20-21);

---

[3] The ALJ gave "great" weight to the May 6, 2015 opinion of Nurse Practitioner Lara Besseghini, ANP, that Morse's seizures are not independently disabling, but neither Morse nor the Commissioner address this opinion in their motion papers.

and treatment notes from May 2017, July 2017, and September 2017 by Dr. Bennett (*i.e.*, treatment notes created after Morse's return to work, which are therefore irrelevant to this claim). (Tr. 22). However, the ALJ failed to explain how this evidence adequately supports his finding that Morse was able to understand, remember and carry out simple instructions and tasks; work in a low stress environment; frequently interact with supervisors; and occasionally interact with co-workers and the general public during the requested closed period of disability. (Tr. 19). The ALJ mentions neither Morse's counseling records with Dr. Treible from November 2014 until January 2017 (Tr. 355-73, 455-58, 882-922, 1151-55), nor Dr. Bennett's other treatment records during the requested closed period. (Tr. 831-35, 838-75, 1003-04, 1012-14).

In sum, the ALJ decision discounted every medical opinion of record which conflicted with his RFC finding and failed to cite any evidence, opinion or otherwise, to support its finding that Morse had the RFC to perform even unskilled jobs on a sustained basis during the closed period of disability. Although the RFC finding need not correspond to a specific medical opinion, it must nevertheless be supported by substantial evidence in the record. Not a single treating provider of record who rendered an opinion concerning Morse's mental functioning believed that Morse was able to perform unskilled work on a sustained basis during the closed period of disability, yet the ALJ discounted these opinions and arbitrarily substituted his own judgment for competent medical opinion evidence. Accordingly, the Court finds that ALJ's mental RFC finding is not supported by substantial evidence and the case must therefore be remanded.

The Court also finds that remand is warranted because when evaluating Morse's subjective symptoms, the ALJ mischaracterized evidence of Morse's daily activities and

relied on evidence related to Morse's condition after the closed period of disability. For example, the ALJ stated that Morse "had the capacity" to attend a primary rally for Bernie Sanders in 2016. (Tr. 19). This statement implies that Morse went to the rally without difficulty, when in actuality, Morse described that he suffered a grand mal seizure while at that rally due to stress, bright lights, and loud noise, which caused him to be transported to the Emergency Room via ambulance. (Tr. 50-51). Thus, contrary to the ALJ's assertion, Morse did not "have the capacity" to attend this rally. This testimony demonstrates instead the severity of Morse's seizure activity during the relevant period. The ALJ also stated that Morse asserted that he "did not drive" during the requested closed period of disability, yet he was able to drive 20 miles to his consultative examination and drove to other locations. (Tr. 20). The ALJ appears to be insinuating that Morse was not candid about his driving capabilities. However, Morse never testified that he did not drive at all during the relevant period; he testified that he drove during that period, but primarily short distances (*i.e.*, meaning that he drove longer distances at times) (Tr. 61-62).

The ALJ further stated that Morse established his ability to tolerate work stress because as of the hearing date, he had been back to work and he only requested a closed period of disability. (Tr. 22). The ALJ then cited treatment records from April 6, 2017, May 31, 2017, and September 25, 2017 (*i.e.*, after Morse's return to work), where Morse appeared to be functioning better. However, these medical records are from treatment rendered after the closed period of disability and are therefore not relevant. Evidence generated after Morse improved is not evidence of his ability to work before the improvement occurred.

Because the ALJ's analysis of Morse's subjective symptoms was improper, remand is appropriate. *Starzynski v. Colvin*, No. 1:15-CV-00940(MAT), 2016 WL 6956404, at *3-4 (W.D.N.Y. Nov. 29, 2016).

## CONCLUSION

For the reasons stated, Morse's motion for judgment on the pleadings (Dkt. No. 6) is granted, the Commissioner's motion for judgment on the pleadings (Dkt. No. 7) is denied, and this case is remanded for further administrative proceedings consistent with this Decision and Order.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:   May 29, 2020
         Buffalo, New York

_____
MICHAEL J. ROEMER
United States Magistrate Judge